IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ANN B.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 cv 9089 ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) Magistrate Judge Susan E. Cox ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Ann B. ("Plaintiff") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"). Plaintiff filed a Memorandum in Support of Motion for Summary Judgment [dkt. 22]; the Commissioner has filed a cross-motion for summary judgment [dkt. 30]. For the reasons stated below, Plaintiff Motion for Summary Judgment [dkt. 22] is granted, and the Commissioner's Motion [dkt. 30] is denied. This matter is remanded for further proceedings consistent with this Memorandum Order and Opinion.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 11, 2014, and SSI on July 11, 2016, alleging a disability onset date of July 20, 2008. (R. 18.) The application was initially denied on January 5, 2015, and upon reconsideration on June 19, 2015, after which Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). *Id.* On July 8, 2016, Plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Kevin Plunkett. (R. 18, 35.) The ALJ also heard testimony

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

from vocational expert ("VE") Linda M. Gels. (R. 18.)

On December 7, 2016, the ALJ denied Plaintiff's applications for DIB and SSI, based on a finding that she was not disabled under the Act. (R. 18-35.) The opinion followed the five-step evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset date of July 20, 2008. (R. 20.) At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease/osteoarthritis, radiculopathy, carpal tunnel syndrome (CTS) bilaterally, iron deficiency/low ferritin anemia, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), learning disorder, panic disorder, and drug and alcohol abuse (DAA). (R. 20-21.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416,926). (R. 21.) The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[2] and concluded:

> [Plaintiff] has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; sit 6 hours; stand 6 hours; walk 6 hours; push/pull as much as lift/carry; occasional handling with left upper extremity; occasional handling with right upper extremity; occasional fingering left and occasional fingering right; may frequently climb ramps and stairs but never climb ladders, ropes or scaffolds; she may frequently stoop, kneel, crouch and crawl. The claimant is limited to performing simple routine work tasks and limited to simple work-related decisions.

(R. 24.) Based on this RFC, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (R. 34.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Specifically, the ALJ found Plaintiff could work as an usher (DOT # 344.677-014), counter clerk (DOT #249.366-010), and furniture rental

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

2

consultant (DOT # 295.357-018). (R. 35.) The ALJ relied on the VE testimony that each of these jobs existed in significant numbers in the national economy (*i.e.*, 4,000 usher positions; 3,000 counter clerk positions; and 20,000 furniture rental consultants). *Id.* Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. *Id.* The Appeals Council declined to review the matter on November 7, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L.Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534

3

F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Plaintiff asserts that the ALJ made two errors. First, Plaintiff contends the ALJ erred by not requiring the VE to provide the requested national job number data. Second, Plaintiff argues that the ALJ improperly discounted the opinions of two of her treating physicians. We find Plaintiff's arguments on this first point persuasive, and we remand on this issue, as detailed below. Therefore, we do not reach the second issue.

**A. The VE's Job Data Must Be Reliable**

In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform. *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015); *Pelfrey v. Com'r of Soc. Sec.*, 2010 WL 909134, at *4 (S.D. Ohio Mar. 10, 2010); *see also Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities"). Typically, one of the sources a VE will rely on is The Dictionary of Occupational Titles ("DOT"). The DOT is a compendium of basic occupational information which lists occupational demands and duties and their accompanying mental and physical requirements and skills. However, the DOT was last revised in 1991, and as to its relevance, the Seventh Circuit has stated, "not only is [the DOT] an obsolete catalog of jobs (most of the entries in it date back to 1977) but it contains no statistics regarding the number of jobs in a given job category that exist in the local, state, or national economy." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir.2014); *see also Forsythe v. Colvin*, 813 F.3d 677, 681 (7th Cir. 2016) ("[t]he vocational experts and administrative law judges can't be blamed for the poverty of the data concerning jobs that applicants for social security disability benefits are capable of performing. It is high time that the Social Security Administration turned its attention to obtaining the needed data.") (collecting cases and references). Nonetheless, the Social Security Administration relies upon the DOT

4

as an "authoritative" publication and its definitions are accepted as reliable evidence of how jobs are performed in the national economy. *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). A VE will also typically rely on job data from The Bureau of Labor Statistics ("BLS"). The recent trends in wages, process, and productivity in the U.S. economy come from the BLS, which is a preferred source for these figures as it contains the largest number of jobs (but does not set forth numbers based on specific DOT codes). The Social Security Administration has taken administrative notice of both the DOT and the Occupational Outlook Handbook published by the BLS. 20 C.F.R. § 416.966(d)(1)-(5).

A finding of an ALJ based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated. *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Although a VE is entitled to rely on various methods and sources of data, the foundation for the VE's opinions must be adequate and VE's testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Although the Seventh Circuit has recognized that the standards by which an expert's reliability is measured are less stringent at an SSA administrative hearing than under the Federal Rules of Evidence, because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is adequate and reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (referencing *Donahue*, 279 F.3d at 446).

"Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue*, 279 F.3d at 446. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911 (citing *Donahue,* 279 F.3d at 446). "If the basis of the vocational expert's conclusions is questioned…then the ALJ should make an inquiry…to find out whether the purported expert's conclusions are reliable." *Donahue,* 279 F.3d at 446 (italics omitted.) However, the expert's refusal to provide data supporting these conclusions, even when asked, does not categorically preclude the expert's testimony from counting as "substantial evidence" – this inquiry is case-by-case and "takes into account all features of the vocational expert's testimony, as well

5

as the rest of the administrative record, [and] defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. ___, 2019 WL 1428885, at *6 (2019).

At the hearing, Plaintiff contested the reliability of the VE's conclusion that significant jobs, such as a counter-clerk, existed in the national economy. (R. 1232.) At the conclusion of the hearing, Plaintiff's counsel then sought to have the ALJ request written documentation backing up the VE's job number availability data from the VE. (R. 1238.)

As part of this appeal, the Commissioner makes much of the fact that "at no time during the more-than-two-hours-long hearing did plaintiff's representative ask the VE for her underlying reasoning or data." [Dkt. 31, p. 9.] This is a red herring; again, Plaintiff's attorney requested that the ALJ request job number documentation in writing from the VE. (R. 1238.) This is *precisely* Plaintiff questioning the basis of the VE's conclusion at the hearing, which triggers the ALJ's duty to make an inquiry to find out whether the VE's conclusions are reliable. *Donahue*, 279 F.3d at 446. It does not matter that this request was couched in a query to the ALJ instead of directly to the VE.[3] Plaintiff clearly questioned the reliability of the low job numbers provided by the VE. The ALJ did not respond to this request and instead ended the hearing without taking this request under advisement. Without an inquiry into the reliability of the VE's testimony, the ALJ erroneously unquestionably accepted the VE's job numbers on her own say-so. *McKinnie*, 368, F.3d 907 at 911 (cautioning ALJs to not unquestioningly accept VE testimony without inquiring into its reliability); *see also Biestek*, 587 U.S. ___, 2019 WL 1428885, at *9-10 (Gorsuch, J., dissenting) (witness's bare conclusions regularly held insufficient to meet substantial evidence threshold).

The ALJ failed to require the VE to provide substantiation of her hearing testimony about the number of jobs in the local economy an individual with Plaintiff's RFC could perform. *Brown v. Berryhill*, 2017 WL 5473466, at *1 (N.D. Ill. 2017); *see also Donahue*, 279 F.3d at 446. In this case, there was no

---

[3] Moreover, the VE was present for this exchange.

specific document or page of which the ALJ could take administrative notice for the counter-clerk or furniture rental consultant positions, positions about which the ALJ did not answer "cogently or thoroughly." *See Biestek*, 587 U.S. \_\_\_, 2019 WL 1428885, at \*5. In addition, while the Plaintiff's attorney had the opportunity to cross-examine the VE, the scope of questioning largely concerned how each job did or did not conform to Plaintiff's RFC. Plaintiff's attorney was unable to ask the VE about the basis of her jobs numbers because the VE did not produce information that would have disclosed her underlying methodology.

Additionally, as mentioned, the VE's responses when Plaintiff's counsel questioned the reliability of her data do not lend confidence to the VE's conclusions. Plaintiff's counsel asked the VE if the "DOT description that you gave [for the counter clerk position], that job, you would agree, is obsolete, correct?" (R. 1233.) The VE responded, "the photo finishing [clerk position], yes…but I think those are duties that are generic." (R. 1233-34.) In addition, the VE did not know of any "company that only does rental of furniture," which undercuts her conclusion that jobs existed in significant numbers in the furniture rental consultant position. (R. 1237); *see also* 42 U.S.C.A. § 423(d)(2)(A) (Stating that "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country). As the VE was not able to identify any positions that exist in either Plaintiff's region, or in the country, the reliability of her conclusion is called into question.

The VE's vague responses to Plaintiff's counsel were insufficient to establish a foundation for her testimony, and she did not substantiate her findings with a written report or current DOT information.[4] *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). This is especially true when the VE gave a DOT job number for an obsolete job in the photo finishing industry (counter-clerk), and

---

[4] While *Biestek,* 587 U.S. \_\_\_, 2019 WL 1428885, at \*5 makes it clear that this is not a categorical bar to an expert's testimony ever meeting the substantial evidence standard, "the testimony would be even better – more reliable and probative – if she had produced supporting data; that would be a best practice for the SSA and its experts." *Id.* (*see also Biestek* fn. 2).

7

could not name a location where Plaintiff could work as a furniture rental consultant. In sum, even deferring to the ALJ, the Court does not believe a reasonable mind would accept the VE's evidence as adequate to support the ALJ's reliance on it, particularly without an inquiry into its reliability in light of these identified issues. *Gracz v. Berryhill*, 2017 WL 1344532, at *6 (N.D. Ill. Apr. 12, 2017) (citing *Richardson*, 402 U.S. at 401; *Zurawski*, 245 F.3d at 887); *Donahue*, 279 F.3d at 446. Because of the VE's vague and uncertain responses, this case in particular warrants the ALJ to have taken a closer look at the VE's backup data (as Plaintiff's counsel had requested the ALJ to do) to determine whether the VE's conclusions were reliable.

In remanding, we are not holding that the VE's jobs numbers are in fact unreliable, only that Plaintiff has the right to see how they were derived so that she can determine whether they are subject to legitimate challenge. *See Weatherbee v. Astrue*, 649, F.3d 565, 572 (7th Cir. 2011) (in the context of a step five analysis, 1,000 of a particular job constitutes a significant number).

**IV.    Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 22] is granted; the Commissioner's motion for summary judgment [dkt. 30] is denied.

Entered: 4/5/2019

                                                Susan E. Cox,
United States Magistrate Judge